IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

FILED - LN
June 8, 2023 11:16 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: EOD SCANNED BY: EOD / 6/8

1:23-cv-591
Sally J. Berens
US Magistrate Judge

(Shaylarena) Robert Eugene Plaster MDOC #846864
G. Robert Cotton Correctional Facility
3500 N ELM Road
Jackson MI 49201
First Plaintiff, IN PRO SE

Possible Unnamed Class of people
With in the MDOC He/she John Doe's
Second Type Plaintiff's

COMPLAINT:

CASE NO.________________
JURY TRIAL : YES

V's

Heidi Washington MDOC Director, et.al.
MDOC GDCRC Board; He/She John Doe's
Any and all MDOC Staff; He/She John Doe's
Defendant's, See Attached List's

Submitted By: Shaylarena Eugene Plaster #846864
Pro Per Plaintiff Shaylarena Eugene Plaster 6-05-2023

Pursuant to rule 38 (b) of the Federal rules of Civil Procedure, Plaintiff's "Shaylarena Plaster" Hereby ask for a trial by jury within this action of all Issues.

Second Type of Plaintiff's if court rules in favor of first Plaintiff and order a class Actions if found under rule 23 of the Federal rules of civil Procedure.

Name: Heidi Washington
Job or Title: MDOC Director
Employed: MDOC/State of Michigan
Address: P.O. Box 30003
Lansing, MI 48909

√ Individual √ Official Capacity

Name: Him/Her(s) John or Jane Doe's
Job or Title: GDCRC Board
Employed: MDOC/State of Michigan
Address: P.O. Box 30003
Lansing, MI 48909

√ Individual √ Official Capacity

Name: Him/Her('s) John or Jane Doe's
Job or Title: MDOC Work Force
Employed: MDOC/State of Michigan
Address: P.O. Box 30003
Lansing, MI 48909

√ Individual √ Official Capacity

Name: Dr. Patricia Schmidt
Job or Title: MDOC (PA)
Employed: MDOC/State of Michigan
Address: P.O. Box 30003
Lansing, MI 48909

√ Individual √ Official Capacity

Name: Gina Courturier
Job or Title: Lead MDOC Trans (PA)
Employed: MDOC/State of Michigan
Address: P.O. Box 30003
Lansing, MI 48909

√ Individual √ Official Capacity

Name: Well Path Inc.
Job or Title: Contracted Health Provider/Grand Prarie Health Services
Employed: MDOC/State of Michigan
Address: 825 Centennial Way
Lansing, MI 48917

√ Individual √ Official Capacity

Name: Tehum/corizon Care Services Inc.
Job or Title: Contracted Health Care Provider
Employed: MDOC/State of Michigan
Address:

√ Individual √ Official Capacity

Name: Noah Nagy
Job or Title: Warden/old warden (JCF)
Employed: MDOC/State of Michigan/G. Robert Cotton
Address: 3500 N. Elm Road Jackson, MI 49201

√ Individual √ Official Capacity

Name: Dr. Dalton
Job or Title: NP (ECF)
Employed: MDOC/State of Michigan/Oak Corr.
Address: 1500 Cabrefre Hwy
Manistee, MI 49660

√ Individual √ Official Capacity

Name: John or Jane Doe's
Job or Title: ADA/OLA Administrator
Employed: MDOC/State of Michigan/Contractor
Address: P.O. Box 30003
Lansing, MI 48909

√ Individual √ Official Capacity

Name: Robin Gilbert
Job or Title: ADA/State Wide Coordinator
Employer: MDOC/State of Michigan
Address: P.O. Box 30003
Lansing, MI 48909

√ Individual √ Official Capacity

Name: Mr. Cobb
Job or Title: Grievance Coordinator (JCF)
Employer: MDOC/G. Robert Cotton
Address: 3500 N. Elm Road
Jackson, MI 49201

√ Individual √ Official Capacity

Name: Richard D. Russell
Job or Title: Manager Grievance
Employer: Office of legal Affairs/MDOC
Address: P.O. Box 30003
Lansing, MI 48909

√ Individual √ Official Capacity

Name: Mr. Crowly
Job or Title: Unit/PC (JCF)
Employer: MDOC/State of Michigan/G. Robert Cotton
Address: 3500 N. Elm Road
Jackson, MI 49201

√ Individual √ Official Capacity

Name: J. Schley
Job or Title: Classification Director (JCF)
Employer: MDOC/G. Robert Cotton Corr. Fac.
Address: 3500 N. Elm Road
Jackson, MI 49201

√ Individual √ Official Capacity

Name: Mr. Salazar (JCF)
Job or Title: RN 13 Assistant Management
Employer: MDOC/G. Robert Cotton Corr. Fac.
Address: 3500 N. Elm Road
Jackson, MI 49201

√ Individual √ Official Capacity

Name: Trisha Kisor
Job or Title: ADW Housing/Ritired
Employer: MDOC/G. Robert Cotton Corr. Fac
Address: 3500 N. Elm Road
Jackson, MI 49201

√ Individual √ Official Capacity

Name: Gail Proctor
Job or Title: G.P. MA LLPC Mental Health Psycologist
Employer: MDOC/G. Robert Cotton Corr. Fac.
Address: 3500 N. Elm Road Jackson, MI 49201

√ Individual √ Official Capacity

Name: Allison Jones
Job or Title: MA Mental Health Psycologist
Employer: MDOC/G. Robert Cotton Corr. Fac
Address: 3500 N. Elm Road
Jackson, MI 49201

√ Individual √ Official Capacity

Name: Ms. Cargor/Warden
Job or Title: Facility Warden (JCF)
Employer: MDOC/G. Robert Cotton Corr. Fac
Address: 3500 N. Elm Road
Jackson, MI 49201

√ Individual √ Official Capacity

Name: Craig Hoekzema MD
Job or Title: outside Contractor
Employed: MDOC /Contractor
Address: 1450 E. Fair Road
Norton Shores, MI
√ Individual √ Official Capacity

Name: Mr Schubring
Job or Title: Facility Manager (JCF)
Employed: MDOC / G. Robert Cotton
Address: 3500 N. Elm Road
Jackson, MI 49201
√ Individual √ Official Capacity

Name: Ms Napier
Job or Title: Administrative Assistant (JCF)
Employed: MDOC / G. Robert Cotton Corr.
Address: 3500 N. Elm Road
Jackson, MI 49201
√ Individual √ Official Capacity

Name: Robin Gilbert
Job or Title: State wide ADA Coordinator
Employed: MDOC / State of Michigan
Address: P.O. Box 30003
Lansing, MI 48909
√ Individual √ Official Capacity

Name: Carmen Mc Intyre
Job or Title: CMO / MD
Employed: MDOC / State of Michigan
Address: P.O. Box 30003
Lansing, MI 48909
√ Individual √ Official Capacity

Name: Brian Majerczyk
Job or Title: Unit chief MA LLP
Employed: MDOC / State of Michigan
Address: P.O. Box 30003
Lansing, MI 48909
√ Individual √ Official Capacity

Name: Dr. Melanie Bale (JCF)
Job or Title: NP / Facility Healthcare Provider Wellpath
Employer: MDOC / G. Robert Cotton Corr.
Address: 3500 N. Elm Road
Jackson, MI 49201
√ Individual √ Official Capacity

Name:
Job or Title:
Employer:
Address:
√ Individual √ Official Capacity

Name:
Job or Title:
Employer:
Address:
√ Individual √ Official Capacity

Name:
Job or Title:
Employer:
Address:
√ Individual √ Official Capacity

Name:
Job or Title:
Employer:
Address:
√ Individual √ Official Capacity

Name:
Job or Title:
Employer:
Address:
√ Individual √ Official Capacity

Basis of Jurisdiction and Venue

This is a civil action authorized by 42 U.S.C. 1983. To redress the deprivation, Under Color of State Law. I may sue state or local officials for the deprivation of any rights privileges, or immunities secured by the Constitution and (Federal Law) we are suing officials for the violation of certain Constitutional Rights. We are bringing suit against state and local officials under a (1983 Claim).

The court has jurisdiction under 28 U.S.C SECTION 1331 AND 1343 (a)(3) Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C Section 2283 and 2284 and rule 65 of the Federal Rules of Civil Procedure. Filing in Western District of Michigan is the appropriate venue under 28 U.S.C. SECTION 1391 (b)(2) It's where the events giving rise to this claim occurred.

Section 1983 Allows claim alleging that "deprivation" of any rights, privileges or immunities secured by the Constitution and 42 U.S.C. 1983. With Federal constitutional or statutory rights claim is/are being violated by state or local officials. This deliberate indifference is serious to my medical need and the violations are listed as follows.

1) First Amendment: Gender expression is a form of speech and Identity.

2) Eighth Amendment: Right to Mental and Medical Health care of serious medical need's and Deliberate Indifferences to the policies.

3) Fourteenth Amendment: Gender Discrimination including the Civil Rights Act of 1964 and 42 U.S.C. 2000e (a)(1) (2000) standard as Title VII. (Gender Discrimination)

4) Cruel and unusual Punishment: Denial of needs corresponding to 42 U.S.C. 1983/ 28 U.S.C.1331

5) Equal Protection under the standard's of treatment and care within SOC, WPATH, DSM-5- Version 8.

6) Gender Dysphoria 302.85; (F64.1): Within DSM- 5- Version 8, Denial of treatment for a serious medical need or surgery.

7) ADA Title II Section 504: Claims under Gender Dysphoria 42 U.S.C. Chapter. 126; 12101 e.t. seq. ( Serious Medical need treatments as in Surgery's and mental health care)

8) Violation's under MDOC Policy Directive 04.06.184 Gender Dysphoria. Violation's in (C1)(C2)(E)(F)(G)(H)(L)(Q).

9) National (PREA) Standard's of Care Sexual Abuse 3rd Edition, 28 C.F.R. part 115 NO. OAG-131 PREA Section (115.15)(F)),(115.31 (a)(1)).
(cross-gender strip searches)

The court's also have the jurisdiction to appoint a special master/ monitor to over see thhis case. Federal Rule of civil Procedure 53; 18 U.S.C. 3626. I'd like the court to appoint a special monitor to handle this case. The court has Jurisdiction to rule on the preliminary in junction and deliberate indifference in this matter.

Under section 1983 Defendant to be found liable for suit for actions "under color of state law or any statute, Ordinance, Regulation, Custom, or Usage , Of any state of Michigan laws in violation of 42 U.S.C. 1983. Section 1983 each defendant acted under color of state or local law.

Defendants acted under color of state law! Defendants all worked in a Michigan department of correction penitentiary. They are required under state and federal law's to not only protect the safety and security of the general public. But they are required to work and act and follow and execute Michigan state law's and U.S. federal law's they are required to protect my state and federal Civil Rights. They treated me "Inhumanely" They violated my state and federal civil rights and constitutional laws. I'm a convicted and sentenced to a state prison with in Michigan.

I have Filed only one lawsuit in 1-21-2015 while incarcerated. This action is not pending and it was Dismissed as untimely. I did appeal the decisions and it's not a ongoing case. It was dismissed and My previous lawsuit do not have any similar facts to this case.

Clear Violation of The 8th Amendment and Equal Protection under the Standard's of treatment and care of state inmate. Showing Cruel and unusual punishment - denial of basic proper medical needs and Not meeting standard's of care for Transgender Gender Dysphoria.

STATEMENT OF CLAIM BY Shaylarena Plaster

In the statement of claim I have almost 5 years of files medical file's and composition logs with dates and affidavits from people. That I have met with and what was chated about along with Emails of dates and time's of issues and two grievance's through all 3 steps. Then ADA title II Reasonable accommodation request covering all the same violations. Over the last 5 years.

Coming in to the Prison in 10th month of 2011 I was labelled Gender Dysphoric but in 1-14-2013 the MDOC removed it From my mental health Plan. Then Got it back in January of 2019 and got on my meds on 4-11-2019. from day one I have been asking for full treatment for Gender-affirming care but for the last 4.5 years I have been told no just Med's were not doing that right now. I keep asking every time I seen the GDCRC Doctor and facilities staff Doctors and logged it in my book. but than on 3-17-22 I had surgery on my face. Than 4-19-22 I got a blood clot (deep vein thrombosis). If I did not get into the ER in time. I may not be here do to the MDOC not taking me off my med's. This is in my documents and I can show It.

The facilities do not know how to care for Transgender. Than in 8-02-22 GDCRC Doctor Ms Couturier did not know that I had a blood clot at all. Do to this I filed the Grievances. Do to are Health care and the staff of the MDOC almost ending my life. Than even on 5-23-2023 with Doctor Ms Couturier my levels still are off after 4.5 years later. No gender-affirming care at all but meds. For me the risk of dieing will keep getting higher by not doing Gender-affirming surgery's. There has been no available ADMINISTRATIVE remedy to Exhaust in the MDOC Grievance process or through the MDOC GDCRC Board.

I have sent all of the information here to day in this filing to (PA) Gina Couturier lead Doctor For the GDCRC Board with no Fix's or changes in care are treatments for over 4 years now. All of my files have been seen by all staff and sent to the GDCRC Board. Showing the Exhaustion of Administrative Remedies at every level With in the MDOC. The fileing's at Discovery will show the case with the MDOC file's. This Will layout the case in this 1983 suit here in this filing. I Exhausted every path and level with in the MDOC to the issues and did not find help or Administrative Fix's or remedies. I even also sent letter to the governors office on this MDOC Issue.

One grievance # JCF-2022-08-1680-28B that Violations of policy Directive 04.06.184 dated for 8-2-22 and do to MDOC not understanding of how to treat my medical needs. This was rejected as vague/illegible /EXTRANEOUS INFORMATION AND UPHELD AT STEP II AND step III denied by Mr. Cobb, Noah Nagy and Richard Russell on 9-22-2022. No JCF staff met with me on this filing issue.

There is no available ADMINISTRATIVE remedy to Exhaust in the MDOC Grievance process. The violations are listed clear in the copy of the e-mail (5-15-22) to ADW Miss Kisor of Housing. The violations are as listed MDOC policy P.D. 04.06.184 in areas of C-1; C-2; E; F; G; H; L AND Q.

1) C-1: Facilitating Training and providing Consultation
2) C-2: Housing, medical and mental health needs trained staff under WAPTH.
3) E: Health record's do to blood clot showing the MDOC putting my life on the line do to not being trained.
4) F: Proper communication do to the cross gender community's
5) G: Proper placement with in the unit's
6) H: Cross gender professional Searches (strip search Issues)
7) L: Clothing and underclothing and store Items to social transition .
8) Q: surgery's
9) PREA Manual 115.15 (F) and 115.31 (a)(1) Do to discrimination.

Than there in the fileing's there is dated email's laying out my grievances do to my Gender Dysphoria and how the MDOC put my life on the line do to not stopping my med's. At the time of Rhinoplasty surgery on my nose. By not knowing how gender-affirming care med's work. The staff and outside doctor did not know they needed to stop the med's 4 to 5 weeks before any surgery. The medical staff have not been Trained in Transgender care. I have been the one to show staff how to care for me. This is not my job to do so. I have had to do this at all the facility's I keep getting move to in all areas of care. The last 3 were URF, ECF, and JCF this shows a bigger issues with in the MDOC.

So I was kept on the med's threw the surgery. On 3-17-2022 the staff at ECF kept me on my Estradiol. Than at ECF on 4-19-22 I was sent to the ER and found out I have a blood clot do to the Estradiol. At this time the ER Doctor told me I will have to stop taking the Estradiol or I will lose my life. Do to the MDOC care I now have PTSD and have put me in a bad place thinking the MDOC will kill me do to not knowing how to care for my gender-affirming care.

Then to find out that the GDCRC Board was not informed of the emergency until 6 months later. Do to the neglect I was off my med's. my body was going back to a man's body. This put me in a bad out look on my life. I should not had to fill in the GDCRC doctor on a emergency. They did not know I was off the med's for about 4 months. Now I have been back on my Estradiol pill for 6 months. But Being on the pills keep me at a higher risk do to getting blood clot after surgery and the risks of loss of my life. I do not have a history of blood clot on the med's before surgery and can Lenk the blood clot to the MDOC not knowing how to care for the Transgender community. Also my age of 48 puts me at a big added risk.

Conclusion of this Issue

I keep asking to be put on the shot of Estradiol do to the low risk of getting blood clots and can be taken off the blood thinners. At the time of this the risk is on going and MDOC medical Staff have not been trained In the care of Gender Dysphoria. After almost 5 years on the meds the testosterone have never been in the right levels and are at 106.17 not under 50.00 that is needed for gender care. The Estradiol level has just got to 116.00 as of 3-29-23 but I feel the Estradiol levels for me need to be at 150.00 in the middle of the levels needed to transition of 100 - 200 for gender care.

There is just so much neglect going on in my care and with in the MDOC class of Transgender community. I have 5 years of files asking for Treatment for a serious medical needs and asking for surgery with know one caring. After almost the loss of my life do to the MDOC. I have to ask the court to come and fix this before more lives are over look and Trans-women are lost to the world.

Second grievance # JCF -2208-1659-08A date is 8-1-2022. Is do to job discrimination do to my Gender Dysphoria not letting me do jobs that I was doing before coming to JCF. This Violations of policy Directive 03.03.140 putting me as potential victim where there is no history to do so. denied at step 1 that there is no violation denied at step II and step III denied by Mr. Cobb, Noah Nagy and Richard Russell on 10-26-2022 .There is no available ADMINISTRATIVE remedy to Exhaust in the MDOC Grievance process. No JCF staff met with me on this filing issue.

Do to the discrimination against an incarcerated Trans-woman on the basis of her transgender status is gender discrimination under the 14th Amendment and that her treatment by MDOC officials should be compared to treatment of other incarcerated women and should not be denied access to job's with in the MDOC do to being gender Dysphoric.

Doing so where there is no history of bad conduct. By scoring someone only on there sexualization of there pronoun under the PREA Assessment is Discrimination. By saying I can not have jobs that I have had at other facilities up to coming to JCF and say to me that the MDOC changed all the PREA score so that a Gender Dysphoric people are all Potential victim's Take jobs from a class of people with in the MDOC. This also violated the ADA title II of the American with disabilities act Section 504 and Rehabilitation Act.

I was at URF and ECF doing (POA) prisoner observation Aide for people attempting suicide for more then 6 years until coming to JCF in 4-25-2022. and found out do to me being trans I can not do jobs do to me being Gender Dysphoric. This keeping me from helping Trans-women that are suicidal with in the MDOC do to no self-help programming. Do to this it's also keeping me out of job's that i'm qualified to work at where at URF for 3 years worked in maintenance jobs. At JCF a Trans-woman can not get any jobs that there qualified for do to this potential victim scoring.

Conclusion of this Issue

After the loss of good paying jobs do to being a Trans-woman with in A male facilities. I have to ask the court to come and fix this before more Trans-women are over looked for jobs with in the MDOC. This is not fare to the MDOC Transgender community. Do to the discrimination of the last 12 months. The waged loss for the POA job would be around $240.04 for 72 POA in one year if I only got 6 POA's a month at $3.32 per POA and the Maintenance job would be 20 days a month. This is 240 days a year at $3.32 a day. So the waged loss would be $796.80 a year. This would be around $1000.00 A year. I ask the court to look in to this issue do to the Discrimination and equal protection and policy issue of the MDOC with in the MDOC facilities.

Gender Dysphoric people have the right to access to any and all jobs just like the next human. The Violations under PREA guidelines and ADA title II of the American with disabilities act Section 504. and Rehabilitation Act. Also is gender discrimination under the 14th Amendment. ((PREA) 28 C.F.R. 115.15)

Third Is my ADA title II Reasonable accommodation request I.D.# 20220811846864 dated for 8-11-2022. I met with JCF ADA Emma Hill on this Do to my Gender Dysphoria needs that are not being met. It was denied on 1-7-2023 By Robin Gilbert. Then Offender was advised proper avenue to address the request. Saying this is not proper process per policy Directive 04.06.155. This is the Grievance policy.

For the ADA Title II Sec 504 claiming Gender Dysphoria not having access to REASONABLE Accommodation In filing this I using copy's of email letters for documents. I layout the need first by MDOC policy 04.06.184. This layout is the same as the grievance in the statement of claim. Grievance number JCF-22-08-1680-28B but this ADA form is under different area of the law. But is still violate the 8th Amendment

The next set of email's lay out the Issues with a meeting. We had with ADW of Housing Ms Kisor and setting in Ms Proctor from Mental Health and with other Trans-women (will be named later) at this facility JCF and here the list of Issues.
1) Community right to health care; 2) Format for Support/ Education group; 3) Clothing/Grooming and social transition and support Group; 4) Cross - gender strip searches; 5) Name changing and gender markers; 6) Confidentiality; 7) Access to LGBTQIA2S + Related reading material; 8) Placement in Female or male facility's; 9) Access to all job Placements; 10) Freeze frame policies and treatment Bans. After 5 years with no fix and just last year getting a blood clot do to The MDOC care leading up to this filing of the 1983 Suit.

I did file a appeal on 1-23-23 with ADA Emma Hill and sent to Lansing OLA Administrator but this can take up to 1 year or more to get back. So I layed out in a copy of the email a recap of the filing and added a copy of a disbursement not letting me get my female clothes with letter from the business office saying talk to PC. Then letter to Facility manager and told me in accordance with P.D. 04.06.184 that the document needs to show the items I'm approved on my individual management plan. But for the last 5 years the GDCRC will not do this.
than how I can not use the grievance because they say there is EXTRANEOUS INFORMATION.

I do not feel I can last 1 or 2 more years before the MDOC gets back to me with this going on with being Transgender and how I feel. With time running on filing the 1983 filing. There is no available ADMINISTRATIVE remedy to Exhaust in the MDOC Grievance process. The MDOC don't have policy's for ADA title II Issues in the Policy to handle the Gender Dysphoric community claim's under ADA Title II.

Do to the serious ongoing violations and deliberate indifference to serious medical needs of the class of Transgender women inmates by failing to provide adequate treatment for their gender Dysphoria, since MDOC officials are aware over the past 7 years that inmates were not receiving adequate medical care or social transition for their gender dysphoria and suffered serious harm including suicide attempts as result (As I was working as prisoner observation aide at URF and ECF facilities) yet officials allowed those conditions to persist. Do to those conditions. I Have suffered irreparable harm in this violation of my 8th Amendment from anxiety,depression suicidal ideation, and getting a blood clot do to the bad care. I have attempts self-mutilation as in banding my private area.

So I ask the court to grant preliminary injunction/prospective to requiring the MDOC to provide adequate treatment for the class of Transgender women and men with in the MDOC. Do to the Mental and Emotional injury and the showing of physical injury while in custody of the MDOC. Even if there is a new administratively directives it will not comply with treatment of medically necessary for treatment of gender dysphoria decisions and monetary damages could not compensate for MDOC deliberate indifference to inmates serious medical needs.

There is no available ADMINISTRATIVE remedy to Exhaust with in the MDOC Grievance or ADA Title II process. The officials with in the MDOC Deny necessary medical and mental Health care. The MDOC has adopted Policies that restrict access to medical and individual needed treatment's.

## MDOC FREEZE FRAME POLICIES AND TREATMENT BANS

The MDOC Put in this Policy Directive 04.06.184 on 6/26/2017 and only letting Gender Dysphoric People have Hormone Treatment's only (med's) for the last 7 years. This is clearly A Freeze Frame Policy. Win it is time for the Evidence to come to the Court you will see from me the MDOC have been limiting my care for more then 5 years now. this is not just me there is 300 Gender Dysphoric with in the MDOC.
The Prison categorically Bans or limits the treatment available to me. That denying treatment to an incarcerated trans woman based on a blanket policy, rather than on an individualized medical evaluation was deliberate indifference to a serious medical need and violated my 8th Amendment. This banned on transition-related surgery for anyone in custody violated my 8th Amendment.
The MDOC will argue that gender-affirming Treatment is to expensive to provide. But noting that hormone therapy and surgery are often cheaper than other medical Treatments. The freeze-frame going on with in the MDOC is limiting treatment Regardless of need and make it impossible for newly diagnosed people to get care.

The MDOC Had 7 years to put in the Infrastructure for My care and the Transgender community but have not and just freezed the Policies and clearly Violates 8th Amendment and access to care.

8th AMENDMENT DELIBERATE INDIFFERENCE

This imposes a duty upon states to provide adequate medical care to incarcerated individuals. Deliberate indifference to the serious medical need of a prisoner constitutes the unnecessary and wanton infliction of pain for bidden by the constitution. Deliberate Indifference has two elements:

1) Whether the prisoner has his objectively serious medical condition.
2) Requires a showing that a prison official has subjective knowledge of -- and then consciously disregards -- an excessive risk to inmate health also involves intentional or reckless conduct, not mere negligence.

Can be demonstrated by proving there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care, or by showing repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff which result in an excessive risk of serious harm.

PRELIMINARY INJUNCTION

On the motion for a Preliminary injunction the court should take into consideration the effect that granting or denying a Preliminary injunction will have on the public. This is Extraordinary and drastic remedies that should not be granted unless the Movant makes a showing that it has carried its burden of persuasion.

Movant has the burden of showing that it has some likelihood of succeeding on the merits that no adequate remedy at law exists. That it will suffer irreparable harm in the interim period to the final resolution of its claims. Fed. R. Civ. P. 65 So if movant establishes the elements for a Preliminary injunction, district court must then balance. The potential harm to the movant if a Preliminary injunction is wrongfully denied against the potential harm to the non-movant if the injunction is wrongfully granted.

The (PLRA) No Prospective relief shall issue with respect to prison conditions unless it is narrowly drawn, extends on further than necessary to correct the violation of a federal right, and is least intrusive means necessary to correct the violation of federal right, and is least intrusive means necessary to correct the violation. (18 U.S.C.A. 3626: civil Rights of institutionalized persons Act -7, 42 U.S.C.A. 1997e) If the (PLRA) is met the courts must give substantial weight to any adverse impact on public safety or the operation of a criminal justice system.

Injunctive Relief For Class Of Transgender Women inmates.

Plaintiff assert that Defendant's Policies and practices subject the class to a substantial risk of serious harm and injury inadequate and delayed evaluation and treatment of gender dysphoria, in violation of their rights under the 8th Amendment. We seek injunctive relief to remedy the flaws in MDOC use of a committee of unqualified officials to make decisions regarding the medical treatment, Security, and placement of transgender inmates; widespread delays or denials in evaluating prisoners for gender dysphoria and in providing hormone therapy, hormone monitoring and Surgery's.

Failure to consider or provide gender-affirming surgery as part of medically necessary treatment for Gender dysphoria.

Failing to allow access to gender-affirming clothing and grooming items.

Failing to make individualized housing placement decisions, and permitting cross-gender strip searches.

Failing to provide access to medical and mental health providers competent to treat gender dysphoria.

Even if GDCRC Board is working on new Policy it is falling short of the care we need in the MDOC and ask to develop a policy to ensure that decisions of inmates with gender dysphoria are made by medical professionals qualified to treat gender dysphoria.

To ensure that timely hormone therapy is provided when medically necessary, including the administration of hormone dosage adjustments and timely routine monitoring of hormone levels.

To cease the policy and practice of depriving gender Dysphoric prisoners of medically necessary social transition and to develop a policy to allow such transition.
(Including individualized placement decisions, avoidance of Cross-gender strip searches and access to gender-affirming clothing and grooming items)

To develop policies and procedures allowing transgender inmates access to clinicians who meet the WPATH competency requirement. To allow inmates to obtain evaluations for gender dysphoria upon request or clinical indications and to advise the court regarding steps taken to train all correctional staff on transgender issues.

---

**This information was taken from the ACLU Case # 3:18-cv-00156-NJR Monroe v. Meeks 584 F.Supp.3d 643; Signed 02/07/2022. This case was on the IDOC for the well-being of the Transgender community.**

FACTUAL Treatment Of Gender Dysphoria

Treatment is which a person experiences clinically significant distress stemming from incongruence between one's experienced or expressed gender and one's assigned gender. Gender dysphoria is considered a serious medical condition with psychiatric components.

It has been removed from the mental and behavioral disorders in the world health organisation classification of diseases and the diagnostic and statistical manual of mental disorders. It's under the World Professional Association For Transgender Health (WPATH) is a professional association dedicated to understanding and treating gender dysphoria.

According to WPATH, it's Standards of care are "The highest standards of health care" for Transgender people.

According to WPATH, Treatment options for gender dysphoria include social role transition, Cross-sex hormone therapy psychotherapy and surgery.

According to WPATH, lists the minimum qualifications of a mental health professional must attain in order to assess and treat gender dysphoria. Specifically, a person must: hold a master's degree in behavioral science and be familiar with the Diagnostic and Statistical manual of mental disorders (DSM) or individuals who are new to the field should work under the supervision of someone with competence who is regarded as an expert in gender dysphoria.

1) SOCIAL ROLE TRANSITION: Is living in the gender role congruent to one's affirmed identity. Would include wearing a female hairstyle, Clothing, Makeup, Feminine Names, Toiletries and female bathroom. In Prison it would require a Transgender woman be afforded the same commissary items that female prisoners can access, have means to safe and Effective Hair Removal, Be Referred to by a female name and be permitted to wear Makeup or Clothing that Affirms her Gender.

2) PSYCHOTHERAPY: To become more resilient to stigma, Family situations, Cope with Social do to Gender Dysphoria

3) SURGERY: There are different surgical reconstruction that eliminates the major source of hormones that contribute to and cause gender Dysphoria. After reconstruction the urogenital organs function and appear the same as one's peers. Medicare declared gender-affirming surgery to be medically necessary and safe in 2014. Studies indicate that less than one percent of patients who undergo gender-affirming surgery around the world experience regret. Other studies show suicide and self-harm dramatically decrease following reconstruction surgery there is other surgical options include removal of the breasts and chest reconstruction.

4) CROSS-SEX HORMONE THERAPY: Is often a necessary component of treating gender dysphoria. So the endocrine society internationally recognized treatment of gender dysphoria and any hormone therapy that falls below the guidelines is considered less-than-adequate treatment. Guidelines state that once a person begins hormone therapy, thay should undergo baseline lab testing to monitor hormone levels. the levels need to be checked every Two to three months for the first year of treatment. Dosages should be adjusted accordingly until a target level is achieved and after this period levels should be checked once or twice each year. Useing spironolactone and estradiol are the two main med's.

5) MDOC POLICIES ON TRANSGENDER INMATES: At the time of this the Gender Dysphoric Policy Directive 04.06.184 Effective Date of 06/26/2017. The directive created to review Transgender care, Placement, Security concerns and oversee health-related treatment plans. Also to oversee the gender related accommodation needs of Transgender community.

This Directive may be under revision but have not put in any updates in for the last 5 years to meet the needs of the Transgender community. The GDCRC Board only meet's once each month to review inmates treatment and care, reviewing maybe 15 out of 300 cases at each meeting, Including treatment plans and inmate requests for surgery and transfers. The therapist would presented some of the issues to the GDCRC Board on behalf of inmates. But do not review medical records and only have so much time for each file being looked at and i do not know if there is a vote on medical issues or how thay render a decision. Also there is no formal appeals process for challenging the GDCRC Board decisions. All the requests for gender- affirming surgery must go to the GDCRC Board and mental health care concerns but there have not been any movement for anyone on the issues from day one of policy for over 6 years have been no surgery's at all. Will only let the Transgender community have med's and that is all. To support this claim I have affidavits from a set number Of People with in the Transgender community.

**This information was taken from the ACLU Case # 3:18-cv-00156-NJR Monroe v. Meeks 584 F.Supp.3d 643; Signed 02/07/2022. This case was on the IDOC for the well-being of the Transgender community.** (Copied Information do what is going on in Michigan, it is 100% the same.)

MONITOR (Special Master)

Were asking If there is changes certainly the court cannot under the different circuit and jurisprudence implement the state wide sweeping revisions to Administrative directives. So we seek if any relief is ordered here must be limited to the class of people with in the MDOC Gender Dysphoric community with in the defined litigation.

This will accomplish the relief if the court rules on the Violated issues with in the Plaintiff litigation. The monitor (Special Master) would over see and explained and and all outcomes and up hold the Court-Ordered ruling's and see that it is timely fixed in the decision on this litigation. Than oversee MDOC training to its medical and mental health providers under WPATH Global Education initiative (GEI) training. Than oversee the treatment for gender Dysphoria requested treatment. Than with timely decisions and action on requested treatment with report's on the out come of what the MDOC is doing.

In this case the Four things I have to show the Court for a Preliminary Injunction and permanent injunction judgment is.

1) That the Defendants violated my rights: They did so by denying access to gender- Expression and limiting me access to treatment that is medically necessary as in Gender-Affirming surgery's.

2) Likely to suffer irreparable harm if i do not receive a preliminary injunction. That can not be fixed. Do to the care I got a blood clot do to staff keeping me on my med's well having surgery. They put my life on the line what more do i need to do. The Health care issues need to be fixed and looked in too.

3) The Threat of harm to me over the Harm the prison officials will face: Just like number Two. MDOC put me In Harm's way by not knowing how to care for my medical need. By not following standards putting my life on the line do to the blood clot.

4) The preliminary injunction will serve the public interest in this way. Family's will not see there loved one's suffering with in the prison. The Inmate's Population of 300 Transgenders with in the MDOC will suffer like we have been for the last 7 years. By only getting hormones do to the MDOC Freeze Frame Policies.

PRELIMINARY INJUNCTIVE AND PERMANENT RELIEF

I'm asking for injunctive relief in these areas:

1) New lab tests to check their prolactin levels and MRI with in 5 days of receipt of the prolactin results.

2) New lab blood test to assess hormone levels. If not with in the guideline test every 3 months until it's with in the Transgender levels of less than 50 nanograms/deciliter of Male hormone and Estradiol level's between 100-200 picograms/milliliter. Until the levels are within an appropriate range.

3) Each plaintiff class member receiving hormone therapy shall get blood work done twice a year to assess hormone levels well as other needed blood work with in the WPATH standard of care.

4) Any Plaintiff class member who has requested evaluation for gender-affirming surgery. Shall be evaluated for such surgery with in 6 months. Doing so by chronological order of original request for surgery. Than provided a prompt written notification of the decision if surgery is denied and include an explanation of the reasons for denial with timeframe to request another evaluation.

5) Plaintiff class shall be allowed to choose the gender of the correctional officer who will conduct a search of their person.

6) Plaintiff class member that requested transfer to a facility matching her/his expressed gender (female facility for Transgender women and male facility for Transgender men) the inmates being evaluated in chronological order to date of request for transfer.Than provided a prompt written notification of the decision if transfer is denied and include an explanation of the reasons for denial with timeframe to request another evaluation.

7) Plaintiff class shall be allowed immediately be provided with access to gender-affirming items in the commissary and shall provided with a list of available gender-affirming items. Than ensure all approved gender-affirming items are available at the commissary for each class member's institution with in 30 day's.

8) Plaintiff class members be ensured that medical care and mental health treatment is conducted by only trained committed staff that is trained by WPATH standard's continuing education on issues of Transgender health. Than insure access to private shower with in the unit's.

9) Ask for MDOC to provide Hair Removal, Gender-Affirming Surgery, setup continuing Quality improvement program Trans-care, Written surgical standards for Trans-care, Implement special population programing, Implement ongoing training for all correctional staff on trans-issues and awareness with harm caused by misgendering and harassment, Implement training for inmates and staff with in the MDOC with regarding incoming transferred trans inmates, Put on a MDOC Identification policy and I.D. label and open up all jobs to trans-women with in The MDOC that have the skills to do the job and not because were Trans-women.

10) DECLARATORY RELIEF & DAMAGES RELIEF: If it is ordered by a jury or judge and if it's fit with in this case frame work of the 1983 suit and Pay all plaintiff's costs in this suit. With a jury trial on all issues triable by jury. The Relief this court deems just and proper and equitable.

Dated: 6-05-2023
Respectfully Submitted,
Shaylarena Plaster

Shaylarena Plaster

I have Read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe to be true. I certify under penalty of perjury that the foregoing is true and correct.

Signature:
(Shaylarena) Robert Eugene Plaster

(Shaylarena) Robert Eugene Plaster Date: 6-05-2023
MDOC # 846864
G. Robert Cotton Corr. Facility
3500 N. Elm Road
Jackson, MI 49201

(Sheglenimal) Robert Plaster
mo.. # 0116LU
G.R
3500 N. Elm Road
Jackson ms, 49201

UNITED
Attn: off;
113 feder
315 west
LANsing, r

US POSTAGE IMI PITNEY BOWES

ZIP 49201 $ 002.70⁰
02 4W
0000376016 JUN 06 2023

Metroplex MI 480 ZIP
TUE 06 JUN 2023 PM

States District Count
e of The CLERK
L Building
LLEGAN street
I 48933

USMS
Screened By