UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT PLASTER #846864,

        Plaintiff,                               Hon. Paul L. Maloney

v.                                             Case No. 1:23-cv-591

HEIDI WASHINGTON, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

      Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan, has sued numerous defendants pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act (RA), alleging claims arising out of the MDOC's treatment of Plaintiff as a transgender woman.

      Presently before me are: (1) the Wellpath Defendants' (Wellpath, LLC, Gina Couturier, P.A., Jennifer Dalton, N.P., and Melanie Bale, N.P.S.) Motion to Dismiss, and Alternatively, for Summary Judgment Based on the Failure to Exhaust Administrative Remedies (ECF No. 25); (2) MDOC Defendants' (MDOC Director Heidi Washington, former JCF Warden Noah Nagy, MDOC ADA Coordinator Robin Gilbert, JCF Grievance Coordinator Tomas Cobb, MDOC Hearings/Grievance Manager Richard Russell, former JCF Prison Counselor Martin Crowley, JCF Classification Director Joshua Schley, JCF Nursing Supervisor John Salazar, former JCF Assistant Deputy Warden Tiffani Kisor, JCF Qualified Mental Health Professional Gail Proctor, JCF Psychologist Alison Jones, JCF Warden Kim Cargor, JCF Facility Manager Timothy Schubring, JCF Litigation Coordinator Kimberly Napier, MDOC Chief Medical Officer Dr. Carmen

1

McIntyre-Leon, and JCF Mental Health Team Unit Chief Brian Majerczyk) Motion to Dismiss and for Summary Judgment on the Basis of Exhaustion (ECF No. 32); and (3) Defendant Craig Hoekzema's Motion to Dismiss and Corrected Motion to Dismiss (ECF Nos. 39 and 42). The motions are fully briefed and ready for decision.

Pursuant to 28 U.S.C. § 636(1)(B), I recommend that (1) the Wellpath Defendants' motion be **GRANTED**; (2) the MDOC Defendants' motion be **GRANTED IN PART AND DENIED IN PART**; and (3) Defendant Hoekzema's motion be **GRANTED.**

## I.  Background

Plaintiff entered the MDOC system in October 2011, at which time she was designated gender dysphoric. In January 2013, the MDOC discontinued that diagnosis from Plaintiff's mental health plan, but reinstated it in January 2019. Plaintiff received medication in April 2019. Plaintiff alleges that, for the last several years, she has been requesting full gender-affirming treatment (gender affirming surgery or "GAS"), but has been informed that the MDOC's current policy is to treat gender dysphoria only with medication. (ECF No. 1 at PageID.5.) Plaintiff has made these requests to both the Gender Dysphoria Collaborative Review Committee (GDCRC) doctor and JCF doctors.

The MDOC's policy addressing gender dysphoria treatment, management, and related issues is set forth in Policy Directive 04.06.184, which became effective June 26, 2017. The policy recognizes that gender dysphoria is a condition that presents "serious medical needs which may not be ignored." Policy Directive 04.06.184 ¶ J. It also creates the GDCRC, which is charged with providing training, consulting, supervision, and support to front-line medical and mental health providers in screening and managing gender dysphoric prisoners, and, in consultation with the onsite primary care provider, formulating a management plan addressing medical/mental health assessment needs, physical and mental health treatment needs, facility and housing placements,

custody classification, and institutional programming. *Id.* ¶ C. The policy specifically authorizes hormone treatment, as well as GAS surgical procedures "on a case by case basis." *Id.* ¶¶ O, Q.

Plaintiff alleges that, in spite of the foregoing policy, MDOC facilities do not know how to properly care for transgender prisoners. She alleges that on March 17, 2022, she had surgery on her face, and on April 19, 2022, she was sent to a hospital's emergency department, where she learned that she had developed a blood clot (deep vein thrombosis) because MDOC medical staff and the outside doctor failed to discontinue her Estradiol prior to surgery. Plaintiff alleges that, in August 2022, Defendant Couturier was unaware that Plaintiff had developed a blood clot, and that even in May 2023 her levels were still off after more than four years of treatment. Plaintiff alleges that she is back on her Estradiol pills but that being on the pill form puts her at greater risk for blood clots. She has requested the shot form of Estradiol as it presents less risk for getting blood clots, but her request apparently has been denied. (*Id.* at PageID.5–6.)

While the complaint certainly is not a model of clarity, liberally construed, it alleges that Defendants continuously violate her Eighth Amendment rights by refusing to provide gender-affirming surgery and other proper treatment. (*Id.* at PageID.5.) She also suggests that Defendants discriminate against transgender inmates by denying them access to prison jobs because of their gender identities. (*Id.* at PageID.6.) Plaintiff further alleges violations of her rights under Title II of the ADA, as well as Section 504 of the RA. (*Id.* at PageID.6–7.) Plaintiff also appears to suggest that Defendants' failure to provide such treatment and rights to transgender inmates violates the Fourteenth Amendment's Equal Protection Clause.

Plaintiff seeks numerous types of preliminary and permanent injunctive relief, including, but not limited to: (1) gender-affirming surgery; (2) the right to "choose the gender of the correctional officer who will conduct [searches of the inmates' persons]" (*id.* at PageID.10); (3)

transfer to facilities that match her expressed gender; and (4) the provision of gender-affirming items in the commissary. (*Id.* at PageID.10–11.)

## II.  Motion Standards

The Wellpath and MDOC Defendants move for dismissal of Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) and, alternatively, for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that Plaintiff failed to properly exhaust her administrative remedies. Defendant Hoekzema filed a motion to dismiss but sought relief under both Rules 12(b)(6) and 56 solely on the merits. In support of his motion, Defendant Hoekzema attached matters outside of the pleadings. Accordingly, I notified Plaintiff that I would consider this motion under the summary judgment standard. (ECF No. 51.) Pursuant to the notice, Plaintiff presented evidence in response to the motion. The instant motions thus invoke both motion standards.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted). As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so

powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.   Discussion

### A.    Merits[1]

### 1.    Eighth Amendment—Treatment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide medical care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

---

[1] The MDOC Defendants contend that Plaintiff's constitutional claims that accrued before June 8, 2020, are barred by the three-year statute of limitations applicable to Section 1983 claims brought in Michigan. (ECF No. 33 at PageID.224.) *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam). Plaintiff does not address the issue in her response. In any event, it does not appear that Plaintiff is alleging any claim based on events that occurred prior to that date.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that she is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can

7

be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting Farmer, 511 U.S. at 842).

However, not every claim by a prisoner that she has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate

medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 604-05 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). A claimant must demonstrate that the care received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### a.    MDOC Defendants

The MDOC Defendants contend that, with regard to her denial-of-transgender-care claim, Plaintiff fails to make specific allegations against many MDOC Defendants and that, with the exception of Defendant Gilbert, Plaintiff's allegations as to the few Defendants she mentions are insufficient to impose liability under Section 1983.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x

9

762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them[,] which would suggest their involvement in the events leading to his injuries").

In addition, a supervisory liability claim under Section 1983 cannot be based on the theory of respondeat superior. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995). "Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'" *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Instead, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

To begin, twice in the complaint, Plaintiff alleges that Defendants Cobb, Nagy, and Russell denied her grievances and grievance appeals. (ECF No. 1 at PageID.5, 7.) She does not allege that

they engaged in any other activity giving rise to her claims; there is no indication that they were responsible for any medical/mental health determinations concerning Plaintiff's transgender care. Thus, as set forth above, they may not be held liable under Section 1983 for denying her grievances and appeals and should be dismissed from the case. *See Grinter v. Knight*, 532 F. 3d 567, 576 (6th Cir. 2008) (the denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under Section 1983).

Next, Plaintiff fails to make specific allegations against medical/mental health providers or officials Defendants Salazar, Jones, McIntyre-Leon, and Majerczyk. Plaintiff also fails to mention non-medical/mental health employees Schley, Cargor, Napier, and Schubring in her Eighth Amendment claim or anywhere else in the complaint. In *Snyder v. Schmidt*, No. 2:19-cv-134, 2019 WL 4593516 (W.D. Mich. Sept. 23, 2019), this Court allowed a transgender prisoner's Eighth Amendment claims based on denial of hormone therapy and female undergarments as part of her gender dysphoria treatment to proceed against the defendants. Although the Court remarked that it was "not clear at this stage what role each of the individual defendants played in deciding whether to approve or deny hormone treatment or undergarments for Plaintiff's condition," it noted that the plaintiff had alleged that some Defendants were members of the GDCRC and that all of the individual defendants were medical or mental health providers whom the plaintiff alleged had met with her at one time or another in response to treatment. *Id.* at *3. Here, Plaintiff has not made similar (or even any) allegations with regard to the foregoing Defendants. Therefore, Defendants Salazar, Jones, McIntyre-Leon, Majerczyk, Schley, Cargor, Napier, and Schubring should be dismissed for failure to state a claim.

The MDOC Defendants further argue that, as with other Defendants, Defendant Washington should be dismissed because she is not specifically mentioned in the complaint. While true, I note that as part of her Eighth Amendment claim, Plaintiff essentially alleges that in spite

11

of its policy, the MDOC maintains a de facto blanket policy of banning GAS for gender dysphoric prisoners. Plaintiff also alleges that the MDOC fails to provide sufficient resources and training to provide proper treatment under the policy. (ECF No. 1 at PageID.5, 7–8.) Under these circumstances, Defendant Washington, the MDOC's policy-maker, is a proper defendant. *See Bailey v. Bureau of Health Care Servs.*, No. 1:17-cv-850, 2017 WL 5150786, at *3 (W.D. Mich. Nov. 7, 2017) ("The proper defendant for a challenge to MDOC policy is the MDOC's policy-maker, MDOC Director Heidi Washington."); *Johannes v. Washington*, No. 14-CV-11691, 2016 WL 8231172, at *7 (E.D. Mich. Jan. 19, 2016), *report and recommendation adopted in relevant part*, 2016 WL 1253266 (E.D. Mich. Mar. 31, 2016) (stating that "to the extent Plaintiffs can support a showing that Director Heyns implemented PD 04.06.150 and failed to hire sufficient staff to provide proper dental care under the policy, Director Heyns (and now Defendant Washington through Fed. R. Civ. P. 25(d)) is a proper defendant in this matter"). Accordingly, I recommend that the Court deny the Rule 12(b)(6) motion with regard to Defendant Washington.

Next, the MDOC Defendants acknowledge that Plaintiff makes specific allegations regarding Defendants Kisor and Proctor. Plaintiff alleges that she sent an email to Defendant Kisor, the Assistant Deputy Warden of Housing at JCF, on May 15, 2022, describing violations of Policy Directive 04.06.184, and that she and other transgender prisoners met in person with Defendant Kisor and Defendant Proctor, a Qualified Mental Health Professional, to address the same or similar issues. (ECF No. 1 at PageID.5, 7.) Defendants argue, however, that Kisor and Proctor should be dismissed because Plaintiff alleges only a failure to act after being notified of constitutional violations, rather than active unconstitutional behavior. (ECF No. 333 at PageID.28.) However, the Sixth Circuit has held that a supervisor may be liable if she "abandons the specific duties of h[er] position in the face of actual knowledge of a breakdown in the proper workings of the department." *Winkler v. Madison Cnty.*, 893 F.3d 877, 898 (6th Cir. 2018) (citation

and internal alterations omitted). Such liability arises "only where some 'execution of the supervisors' job function result[s] in [the p]laintiff's injury.'" *Id.* (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)). Here, Plaintiff alleges that she raised transgender issues concerning housing, treatment, and support, at least some of which were arguably within Defendants' respective job duties and not being addressed at the facility. While the complaint does not provide great detail as to Defendants Kisor's and Proctor's actions, inactions, or liability, at this point I conclude that it suffices to survive a Rule 12(b)(6) challenge.

Plaintiff asserts that she needs discovery in order to be able to provide sufficient factual matter to cure the foregoing pleading deficiencies. (ECF No. 52-2 at PageID.623.) However, a motion under Rule 12(b)(6) tests the sufficiency of the complaint's allegations before discovery. *See, e.g., Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013) ("A plaintiff is not entitled to discovery before a motion to dismiss, and dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases that will not survive summary judgment"); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) ("The very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.") (internal quotation marks omitted). Thus, Plaintiff must plead a viable claim before she is entitled to discovery.

In sum, I recommend that Plaintiff's claims against Cobb, Nagy, Russell, Salazar, Jones, McIntyre-Leon, Majerczyk, Schley, Cargor, Napier, and Schubring be dismissed for the reasons set forth above.

### b.      Wellpath Defendants

The Wellpath Defendants assert that all of Plaintiff's claims against them fail under Rule 12(b)(6). First, Defendants note that the complaint contains no factual allegation showing how Defendants Jennifer Dalton, N.P., and Melanie Bale, N.P., were deliberately indifferent to

Plaintiff's serious medical need. Defendants are correct. Indeed, the complaint does not even mention Defendants Dalton and Bale. Thus, they should be dismissed from this action.

Next, regarding Defendant Gina Couturier, P.A., Defendants concede that the complaint does mention her, but they argue that the factual allegations do not suffice to demonstrate deliberate indifference. Those allegations are: (1) on August 2, 2022, Defendant Couterier was not aware that Plaintiff had a blood clot in April 2022; and (2) that on May 23, 2023, with Defendant Couturier, her levels were still off after more than four years. (ECF No. 1 at PageID.5.) In response, Plaintiff attaches affidavits and declarations from other transgender prisoners, as well as records of treatment by Defendant Courterier. Because the Wellpath Defendants brought their motion under Rule 12(b)(6), the Court may not consider matters beyond the complaint. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint."). While there are exceptions to this rule, none of them applies. In any event, Plaintiff's specific allegations against Defendant Courterier cited above do not satisfy the deliberate indifference standard. That being said, Plaintiff alleges that she was denied GAS and, as set forth above, under the applicable policy, the GDCRC makes that determination. Plaintiff also alleges that Defendant Couterier was a doctor for the GDCRC, which indicates that she was a member of that committee. As in *Snider*, if the MDOC's policy was followed, Defendant Couterier may have been involved to some extent in the decision to deny surgery. *See* 2019 WL 4593516, at *3. Thus, at this juncture, Plaintiff's Eighth Amendment claim against Defendant Couterier survives dismissal under Rule 12(b)(6).

Finally, Wellpath argues that it is entitled to dismissal because Plaintiff fails to allege that a Wellpath policy or custom led to the alleged constitutional deprivation. A private entity like Wellpath, which contracts with the State of Michigan to perform the traditional state function of providing healthcare to inmates, can "be sued under § 1983 as one acting 'under color of state

14

law.'" *See Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). For Wellpath to be liable, however, the execution of its policy or custom must be the source of the alleged injury. *Perry v. Corizon Health, Inc.*, No. 17-2489, 2018 WL 3006334, at *1 (6th Cir. June 8, 2018). In other words, Wellpath is subject to the same standard for liability as a municipal defendant. *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "[M]unicipal defendants may only be sued under § 1983 for their own unconstitutional or illegal policies and may not be held vicariously liable for the unconstitutional acts of their employees." *Fox v. DeSoto*, 489 F.3d 227, 238 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 691).

Plaintiff has not plausibly alleged that a policy, practice, or custom of Wellpath is the source of her injury. Instead, she contends that the MDOC's policies caused and/or could have prevented her suffering. (ECF No. 1 at PageID.5, 7.) Moreover, she does not even mention Wellpath in the body of the complaint. Thus, Plaintiff fails to state a claim against Wellpath.

### c.    Defendant Hoekzema

Defendant Hoekzema is the "outside doctor" who performed an external septorhinoplasty with bilateral interior reduction on Plaintiff on March 17, 2022. (ECF No. 42-3.) Plaintiff alleges that Defendant Hoekzema "did not know that [he] needed to stop the med's [sic] 4 to 5 weeks before any surgery." (ECF No. 1.) Plaintiff alleges that the failure to stop her Estradiol led to her blood clot about a month later. The surgery itself was successful, without any complications. (ECF No. 42-3 at PageID.381.)

Defendant Hoekzema moves for dismissal, or for summary judgment, on the grounds that Plaintiff failed to sufficiently allege that Defendant Hoekzema acted with deliberate indifference in not stopping Plaintiff's gender dysphoria medication prior to the surgery and that Plaintiff has failed to demonstrate that, as an outside doctor, he is a state actor.

15

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). As an initial matter, Plaintiff alleges that Defendant Hoekzema was an outside doctor, but alleges no fact suggesting that he might qualify as a state actor. A private doctor does not become a state actor merely because he treats a prisoner. *Scott v. Ambani*, 577 F.3d 642, 649 (6th Cir. 2009). Instead, the doctor must have an employment or contractual relationship with the state to be considered a state actor. *Id.* Plaintiff merely alleges that Defendant Hoekzema performed surgery on Plaintiff and failed to stop her gender dysphoria medication, but she does not allege that he had any particular relationship with the MDOC or the State of Michigan. The lack of such a factual allegation warrants dismissal. *See Thomas v. Garner*, No. 1:18-cv-48, 2018 WL 4384587, at *3 (M.D. Tenn. Sept. 13, 2018) ("Because Plaintiff fails to allege that Dr. McKnight had any particular function in the state system, he was not acting under color of state law and Plaintiff fails to state a claim against him."); *Raper v. Cotroneo*, No. 1:17-cv-368, 2017 WL 4173507, at *3 (W.D. Mich. Sept. 21, 2017) (holding that the plaintiff-prisoner's failure to allege anything more than that the defendant surgeon performed surgery poorly on the plaintiff's leg warranted dismissal because the doctor could not be considered a state actor).

In her response, Plaintiff contends that even if Defendant Hoeksema is considered an independent doctor, the fact that he takes government insurance, such as Medicare or Medicaid, is enough to render him a state actor. (ECF No. 57 at PageID.860.) The court in *Raper* specifically noted that such circumstances are not enough to render a private doctor a state actor. *Id.* ("The fact that Defendant Cotroneo may have been paid from public resources does not render him a state actor for purposes of § 1983." (citing *See Rendell–Baker v. Kohn*, 457 U.S. 830, 840 (1982))). Similarly, Defendant Hoekzema does not qualify as a state actor simply because he is subject to

16

State of Michigan licensing requirements. *Id.* (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Apart from failing to allege that Defendant Hoekzema is a state actor, Plaintiff fails to demonstrate that Defendant Hoekzema was deliberately indifferent. Plaintiff simply alleges that Defendant Hoekzema did not know that Estradiol needed to be stopped 4 to 5 weeks before surgery. (ECF No. 1 at PageID.5.) As Defendant Hoekzema correctly argues, at best, this is an allegation of medical malpractice (negligence), not deliberate indifference. In her response, Plaintiff argues that she informed Defendant Hoekzema that she was gender dysphoric and was still on her transitioning medication. (ECF No. 57 at PageID.851.) But this argument does not move the ball any closer to where it must be—that Defendant Hoekzema acted with "a sufficiently culpable state of mind." *Brown*, 207 F.3d at 867. Moreover, Plaintiff's own evidence, which shows that some of her transitioning medication was in fact held (ECF No. 57-4 at PageID.881), undermines her assertion that Defendant Hoekzema disregarded a known risk of harm.

The cases Plaintiff cites are easily distinguishable. In *Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017), the defendants failed to provide the plaintiff any treatment for his severe form of arthritis for three months and had provided him medication that was known to be ineffective in treating his condition. *Id.* at 369–70. In *McCarthy v. Place*, 313 F. App'x 810 (6th Cir. 2008), the plaintiff alleged that a dentist was deliberately indifferent to his dental needs by delaying the extraction of two teeth, which caused him to suffer pain in another tooth with a cavity for seven months. While the court found that the dentist did not recklessly disregard the plaintiff's pain by extracting only one tooth at a time, it concluded the evidence could support a finding of deliberate indifference based on the dentist's knowledge that the plaintiff had been in pain for over seven months. *Id.* at 815–16. In contrast to both *Darrah* and *McCarthy*, there is no allegation that

Defendant Hoekzema failed timely to treat Plaintiff's condition or delayed addressing her pain or symptoms. Accordingly, I recommend that Defendant Hoekzema be dismissed from this action.

### 2.    Equal Protection Claim

Plaintiff alleges that Defendants discriminated against her in denying her the opportunity to work as a Prisoner Observation Aid due to her scoring as a potential victim based on her gender dysphoria. The MDOC Defendants do not contend that this claim is legally insufficient. *See Avery v. Nelson*, No. 1:23-cv-160, 2023 WL 2399830, at *3 (W.D. Mich. Mar. 8, 2023) (concluding that the plaintiff's allegation that he was terminated from his prison job on the basis of his gender dysphoria and related behavior stated a valid Fourteenth Amendment equal protection claim). Defendants assert that the claim fails because Plaintiff does not allege the individual(s) involved the claim. (ECF No. 33 at PageID.237.)

While it is true that Plaintiff does not identify the specific individuals involved in the claim, she identifies her grievance, JCF-2208-1659-08A, as addressing this claim. Although Plaintiff did not attach this grievance to her complaint, on a motion to dismiss, a court may consider not only the complaint, but documents outside the pleadings that "are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citation and internal quotation marks omitted). Among other things, a court may consider matters of public record, items appearing in the case record, and documents attached to a motion to dismiss. *See id.*; *Johnson v. Trott & Trott, P.C.*, 829 F. Supp. 2d 564, 568 (W.D. Mich. 2011).

Here, the Court may consider Plaintiff's grievance because she references it in her complaint, it is central to her claim, and it is in the case record as an attachment to the MDOC Defendants' motion. *See Chandler v. Hawkins*, No. 5:16-CV-79, 2017 WL 1319831, at *2 n.2 (W.D. Ky. Apr. 6, 2017) ("Here, Chandler references the IGP as well as his grievances in his

complaint, and these items are central to his claims, so the Court may consider them without converting Defendants' motion into one for summary judgment."); *Walker v. Crowell*, No. 2:14-CV-234, 2017 WL 663093, at *1 n.1 (E.D. Tenn. Feb. 15, 2017) (considering the plaintiff's medical records and grievances referenced in the complaint). As Defendants acknowledge, Plaintiff named Defendants Crowley and Kisor in grievance JCF-2208-1659-08A. (ECF No. 33-3 at PageID.260.) Therefore, I recommend that the Court allow this claim to proceed against Defendants Crowley and Kisor.

### 3.    ADA and RA Claims

#### a.    Wellpath Defendants

The Wellpath Defendants argue that Plaintiff fails to state a viable claim against them under the ADA or the RA because they are not proper parties. Title II of the ADA applies only to a "public entity." 42 U.S.C. § 12132. Because Wellpath is a private entity, it is not subject to suit under Title II. *See Thompson v. Mich. Dep't of Corr.*, No. 17-10490, 2018 WL 5094078, at *2 (E.D. Mich. Aug. 10, 2018) (concluding that a private health care provider that contracted with a state prison was not a "public entity" under the ADA). Similarly, "Wellpath is neither a federal agency nor receives federal funds under the Rehabilitation Act." *Johnson v. Wellpath/CSS*, No. 3:21-CV-484, 2023 WL 4240756, at *4 (W.D. Ky. June 28, 2023) (citing *McIntosh v. Corizon*, No. 2:14-CV-00099-JMS, 2018 WL 1456229, at *6 (S.D. Ind. Mar. 23, 2018)); *see also Watson v. Michigan*, No. 18-cv-10518, 2018 WL 2194225, at *2 (E.D. Mich. May 14, 2018) (holding that a private company that contracted with the State of Michigan to provide prisoner health care was not a public entity under the RA). Thus, to the extent Plaintiff intended to sue Wellpath or its employees on her ADA/RA claims, those claims should be dismissed.

### d.    MDOC Defendants

The MDOC Defendants concede that, for purposes of their motion to dismiss, Plaintiff has sufficiently alleged claims under the ADA and the RA based on her gender dysphoria. They contend, however, these claims should be allowed to proceed only against Defendant Washington in her official capacity.

The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his or her official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g., Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). To the extent Plaintiff sues any Defendant in his or her individual capacity on her ADA/RA claims, those claims are properly dismissed. *See, e.g.*, *Jones v. Washington*, No. 1:23-cv-410, 2024 WL 242775, at *8 (W.D. Mich. Jan. 23, 2024) (dismissing individual capacity ADA/RA claims against all of the defendants). Because Plaintiff has not sued the MDOC but has sued Washington—the highest-ranking official in the MDOC—in her official capacity, she is a proper defendant for Plaintiff's ADA/RA claims. As this Court has previously recognized, when a plaintiff has brought official capacity claims against the highest-ranking MDOC Defendant, as well as other lower-level MDOC employees, the claims against the lower-level employees are properly dismissed as redundant. *Thompson v. Washington*, No. 1:21-cv-683, 2022 WL 2128264, at *10 (W.D. Mich. June 14, 2022). Therefore, Plaintiff's official capacity ADA/RA claims against Defendants Kisor and Proctor should be dismissed.

### 4.    28 U.S.C. § 1915(e)(2)(B)(ii) Review

Although Defendants have not addressed the following issues, I do so pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case *at any time* if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." (italics added)).

First, Plaintiff has named as Defendants Him/Her(s) John or Jane Does MDOC Work Force. Plaintiff fails to make any factual allegations against these unknown parties; no claim is alleged against them. The same is true with regard to Defendant Patricia Schmidt. Plaintiff fails to allege anything about Defendant Schmidt, including how she violated Plaintiff's constitutional rights. Thus, as set forth above, these parties are properly dismissed from the action because Plaintiff fails to allege a plausible claim against them.

Next, Plaintiff cites the First Amendment and alleges that "[g]ender expression is a form of speech and identity." (ECF No. 1 at PageID.4.) Plaintiff fails to further elaborate on this claim elsewhere in her complaint. The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. 1. Although this amendment expressly protects speech, the Supreme Court has long held that "the Constitution looks beyond written or spoken words as mediums of expression." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 569 (1995). In fact, "[s]ymbolism is a primitive but effective way of communicating ideas." *West Va. Bd. of Ed. v. Barnette*, 319 U.S. 624, 632 (1943). On the other hand, the Court has rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). To determine whether conduct is "sufficiently imbued with elements of communication" such that it is protected by the First Amendment, courts consider "the nature of [the plaintiff's] activity, combined with the factual context and environment in which it was undertaken . . . ." *Spence v. Washington*, 418 U.S. 405, 409–10 (1974). In particular, a court considers whether the conduct was "intended to be communicative" and, "in context, would reasonably be understood by the viewer to be communicative." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 294 (1984). Plaintiff fails to state a plausible First Amendment claim because she fails to identify specific conduct that she intended to be communicative *and* that would

be understood by the viewer to be communicative. *See Ditto v. Leecok*, No. 4:23-cv-335, 2023 WL 8461667, at *5–6 (N.D. Fla. Nov. 7, 2023), *report and recommendation adopted*, (N.D. Fla. Dec. 6, 2023) (rejecting transgender prisoner's claim that being clean shaven reasonably would be understood as expressing female gender identity). Thus, the First Amendment claim is properly dismissed.

Next it appears that Plaintiff asserts violations of MDOC Policy Directive 04.06.184 as violations under Section 1983. Alleged violations of MDOC policy do not rise to the level of a violation or deprivation of a federal constitutional right cognizable under Section 1983. *See Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008) (ruling that "failing to follow proper procedures is insufficient to establish an infringement of a liberty interest" and citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)); *McVeigh v. Bartlett*, No. 94-2347, 1995 WL 236687, *1 (6th Cir. April 21, 1995) (failure to follow MDOC Policy Directive does not rise to the level of a constitutional violation because the Directive does not create a liberty interest protected by the Fourteenth Amendment's Due Process Clause).

Similarly, although Plaintiff cites Prison Rape Elimination Act (PREA) Standards of Care, she has no private right of action under the PREA. *See Wilson v. PTS of Am., LLC*, No. 1:16-cv-1250, 2018 WL 1040348, at *3 (W.D. Mich. Jan. 22, 2018), *report and recommendation adopted*, 2018 WL 1014114 (W.D. Mich. Feb. 22, 2018) ("Plaintiff's claim fails because he 'has no independent cause of action for any Defendant's failure to comply with the Prison Rape Elimination Act.'" (quoting *Beeman v. Heyns*, No. 1:16–cv–27, 2016 WL 1316771 at *12, n. 4 (W.D. Mich. April 5, 2016))); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not.").

Plaintiff's claims based upon violations of MDOC Policy and the PREA are thus properly dismissed.

### B.    Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance

"should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, she may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, she may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their respective motions for summary judgment, the Wellpath Defendants and the MDOC Defendants have submitted Plaintiff's Step III Grievance Report showing the grievances that Plaintiff pursued through Step III of the MDOC's grievance process during the three-year period prior to the date Plaintiff filed this action. (ECF No. 25-1; ECF No. 33-3.) Of the seven grievances Plaintiff filed during this time, only two grievances, JCF-22-08-1659-08A (1659 Grievance) and JCF-22-08-1680-28B (1680 Grievance), are relevant to Plaintiff's claims in this case. As previously noted, the 1659 Grievance concerns Plaintiff's claims that MDOC Defendants Crowley and Kisor violated her Fourteenth Amendment equal protection right by precluding her from holding certain prison jobs because she scored as a potential victim in a PREA assessment.

### 1.    Wellpath Defendants

The Wellpath Defendants contend that they are entitled to summary judgment based on Plaintiff's failure to properly exhaust her claims against them. As set forth above, the only Wellpath Defendant against whom Plaintiff has alleged a plausible claim is Defendant Couturier. But even if Plaintiff had alleged valid claims against all Wellpath Defendants, the 1680 Grievance must have exhausted Plaintiff's claims against each one.

In the 1680 Grievance, Plaintiff wrote:

> My Eighth and Fourteenth Amendment rights are being violated. Due to this my life has been on the line, and emotional, physical, mental, distress. Do [sic] not providing proper transgender care and bypassing procedures. See attached 7 page file. The state of claim is in the 7 page file. The 7 pages are part of my Grievance.

(ECF No. 25-1 at PageID.133.) The grievance was rejected as follows:

> "Grievance is vague as to what the main issue is or who you are grieving. Grievances need to state who, what, when, where, why and how. You have provided no information on any specific policy or procedure that has been violated or any unsatisfactory condition of confinement."

(*Id.* at PageID.134.) The grievance was also rejected as untimely. (*Id.* at PageID.133.) Plaintiff appealed the rejection to Step II. The Step II respondent upheld the rejection on the ground that the grievance was vague. (*Id.* at PageID.131–32.) Plaintiff appealed the rejection to Step III, but the rejection was again upheld. (*Id.* at PageID.130–31.)

The Wellpath Defendants note that the 1680 Grievance was rejected as untimely and vague, but also argue that it could not properly exhaust Plaintiff's claims against them because it failed to specifically name any Wellpath Defendant.[2] Setting aside the latter argument,[3] Policy Directive 03.02.130 provides that the grievance coordinator may reject a grievance if "[i]t is vague, illegible, or contains multiple unrelated issues." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ J.1. Here,

---

[2] Plaintiff notes, correctly, that the Wellpath Defendants cite Grievance RGC-22-04-08-3-27a, which is not a grievance reflected on Plaintiff's Step III report. (ECF No. 25 at PageID.114.) It appears that this reference was a drafting error. In any event, Defendants made clear that they were citing the 1680 Grievance. (*Id.* at PageID.113 n.3.)

[3] Although the 1680 Grievance did not specifically mention Defendant Couturier, it did mention the GDCRC. Defendant Couturier is connected with the GDCRC and perhaps one of its members. It thus would appear that Plaintiff properly identified Defendant Couturier. *See Johnson v. Blessman*, No. 2:20-cv-10147, 2022 WL 1055456, at *5–6 (E.D. Mich. Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 976969 (E.D. Mich. Mar. 31, 2022) (concluding that by naming the Pain Management Committee in his grievance, the plaintiff adequately identified all of its members) (quoting *Mahaffey v. Buskirk*, No. 13-14646, 2014 WL 2864099, at *11 n.13 (E.D. Mich. June 24, 2014) (stating that "there is no substantive difference between identifying a defendant by name . . ., position, or other information")). Even so, this does not cure the rejection.

the grievance was properly rejected as vague. The grievance policy states that "[t]he issues should be stated briefly but concisely," and provide the respondent sufficient information to identify the issue being grieved, including the "who, what, when, where, why, [and] how" of the particular issue, as well as "[d]ates, times, places, and names of all those involved." *Id.* ¶ S. Although Plaintiff's description in the grievance was concise, it described a general complaint without any details. It is true that Plaintiff attached seven pages of information to the grievance, but it would be unreasonable to expect the respondent to be able to glean the precise nature of the grievance from those seven pages. Rather than limiting her submission to a reasonably defined issue, Plaintiff presented a smorgasbord of largely undefined complaints covering a broad array of transgender issues. In short, a prisoner fails to comply with the grievance policy when the respondent is required to guess at the issue(s) being grieved. Accordingly, Plaintiff failed to properly exhaust her claim against Defendant Couturier (or any other Wellpath Defendant). *See Vandiver v. Correctional Med. Servs., Inc.*, 326 F. App'x 885, 891 n.3 (6th Cir. 2009) (holding that a grievance rejected as vague did not satisfy the exhaustion requirement). Thus, I recommend that Plaintiff's claim against Defendant Couturier be dismissed without prejudice based on lack of exhaustion.

## 2.    MDOC Defendants

The MDOC Defendants also contend that neither the 1659 Grievance nor the 1680 Grievance exhausted Plaintiff's claims against the MDOC Defendants. Initially, the MDOC Defendants concede that Plaintiff exhausted the 1659 Grievance against Defendants Crowly and Kisor through all three steps, but they contend that Plaintiff failed to connect them to any claim in her complaint. As set forth above, however, Plaintiff's reference in her complaint to the 1659 Grievance adequately connects Defendants Crowly and Kisor to Plaintiff's job-related equal protection claim. Accordingly, I conclude that Plaintiff exhausted this claim as required by the grievance policy.

As for Plaintiff's remaining claims against Defendants Gilbert, Kisor, Proctor, and Washington, the 1680 Grievance was rejected as vague and thus failed properly to exhaust those claims. This includes Plaintiff's ADA and RA claims, which must be exhausted pursuant to the MDOC's grievance policy. *Diemond v. Michigan Dep't of Corrs.*, No. 1:20-cv-473, 2021 WL 2942604, at *4 (W.D. Mich. May 25, 2021), *report and recommendation adopted*, 2021 WL 2587586 (W.D. Mich. June 24, 2021) ("[W]hile both plaintiff and defendant MDOC discuss whether plaintiff filed a request for an accommodation pursuant to Policy Directive 04.06.155, the relevant consideration is whether plaintiff exhausted a grievance under Policy Directive 03.02.130 prior to filing this lawsuit.") (citing *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061–62 (9th Cir. 2007)). Therefore, Plaintiff's claims against these Defendants should be dismissed without prejudice.

## IV.  Conclusion

For the foregoing reasons, I recommend that the Wellpath Defendants' motion (ECF No. 25) be **granted**, dismissing Plaintiff's claims against Defendants Dalton, Bale, and Wellpath **with prejudice** for failure to state a claim and dismissing Plaintiff's claims against Defendant Couturier **without prejudice** for lack of exhaustion.

I further recommend that the Court **grant in part** the MDOC Defendants' motion (ECF No. 32), dismissing Plaintiff's claims against Defendants Cobb, Nagy, Russell, Salazar, Jones, McIntyre-Leon, Majerczyk, Schley, Cargor, Napier, and Schubring **with prejudice** for failure to state a claim and dismissing Plaintiff's claims against Defendants Gilbert, Proctor, Washington, and, with the exception of the equal protection claim against her, Defendant Kisor **without prejudice** for lack of exhaustion. I recommend that the motion be **denied** with regard to Plaintiff's job-related equal protection claims against Defendants Crowly and Kisor.

I further recommend that the Court **grant** Defendant Hoekzema's motion (ECF Nos. 39 and 42) and dismiss Plaintiff's claims against him **with prejudice**.

Finally, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), I recommend that the Court dismiss Plaintiff's claims against Defendants Him/Her(s) John or Jane Does MDOC Work Force and Patricia Schmidt, as well as Plaintiff's First Amendment claim and claims asserting MDOC policy violations and PREA violations, **with prejudice** for failure to state a claim.

Dated: February 8, 2024                              /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).